In The United States Court Of Appeals
Fifth Circuit

U.S. COURT OF APPEALS RECEIVED AUG 21 2017 FIFTH CIRCUIT

John Hale     Plaintiff
V    No: 1:14-cv-61 LG-JCG
Harrison County et,al    Defendants

RE No. 17-60246

Dear Clerk I'm Requesting The Honorable Court To Allow me To Appeal Of My Case As A Popuror.

There has been A Mistake By The District Court when The Judge Counted me As having Three Strikes.

IT is True That I was assesed A Strike in The Hattisberg District Court by Magistrate M.T.P., Hale V Mississippi 2007 US Dist Lexis 83518 (SD Miss nov 9, 2007)

However Plaintiff's Case was Vacated by Remanded by Hale V King 2011 US. App Lexis 10642. See Cases Attached * [See] also — Mayfeild V. Texas Dept Of Criminal Justice 529 F3d 599, 617 (5th Cir 2008); Powells V. Minnehaha Cnty Sheriffs Dept 198 F3d 711, 713 (8th Cir 1999) Citing — Moore V Doan No... 98-CV-2307, 1998 US. Dist Lexis 19624, 1998 WL 887089 at *5 (N.D. Ill Dec 10 1998). (.....

[1]

That Overturning A Dismissal in Part and Reinstating Some But not All Of A Complaint Eliminates any Strike Originally Thought To Apply To The Case); — In <u>Pointer V. Wilkinson 502 F3d 369, 372-73 (6th Cir 2007)</u> (The 6th Circuit held That a Complaint dismissed in part for failure To exhaust and in Part on one Of The grounds enumerated in § 1915(g) Counts As A Strike — however it Also — Recognized That if Some Of The Claims Were dismissed Without Prejudice for Failure To exhaust And Other Claims Were found To have Merit — Then The dismissal Of any Frivolous Claims Will Not Count As A Strike <u>Pointer 502 F3d at 372 376-77 quoting</u> <u>Clemons V. Young 240 F Supp 2d 639, 641 (ED Mich 2003)</u>

Plaintiff Does not have have Three Strikes And Should be Granted An Appeal I.F.P. Status.

Thank you in Advance for your Time and Consideration — Respectfully Submitted Under Penalty Of Purjury This The 15th day Of Aug 2017

By John Hale
Pro-se

[2]

In the United States Court of Appeals
Fifth Circuit

John Hale
V
Harrison County et al     1:14CV6126-JCG

Re No. 17-60246

Dear Clerk

I'm Entitled To have This Appeal Proceed Informa Pauper Under The Law.

I Do Not Have Three Strikes Please Tell Me What My Next Step is. — How Do I Appeal To The US Supreme Court?

I Only Completed The 8th Grade And have Done All My Litigating Using Common Sense. I don't understand The Rules, I've Just Taught

(1)

My Self, By Citing Massive Amounts Of Case Law.

The Dist Court Was Wrong on me Having 3 Strikes, The Magistrate Should have Recused him Self As he Just Came To The Dist Court From The Circuit Court of Harrison County -- The Defendants In My Civil Action -- Case law Tells me That In Mississippi A Judge Should Recuse him self under Canon 3C Of The Code Of Judicial Conduct -- when his Impartiality Reasonably *"Might" be* questioned [See Jenkins V State 570So2d1191,1192 (Miss 1990) The Case is In Crim Context

(2)

How Everything Leagl is The Same The Judge Just Came From Serving As A Circuit Court Judge For Harrison County -- At The Spears Hearing I Got A Bad Vibe From The Magistrate Right From The Get Go. he had A Bias Attitude Toward me and my Case From The State.

I did Not Agree To have him hear The Case. his Report & Rec, is Erronious he Used The Wrong Law To Dismiss My ADA. AH Claims

I Just Seek To Assuert my Right To An Appeal - IFP. As I do not have 3 Strikes I need The Record And Then I Could Brief The Appeal And Show

(3)

This Honorable 5th Circuit find that my Claim is Meritorious And I have Standing

Ive Filed A lot of Civil Actions Aginst Harrison County And The Jail employees So They Dont Like me. But Regardless whether They Like me Does Not Matter. what Matters is if I have A Legitamate Claim

Its A New Premiss under The ADA, AA 2008 Amendment, -- Major Bodily Functions -- I was Seeking Accommodation of my Liver & Kidney Function Due To Hepatitus-C

Please Discusse This with The Honorable Judges On The Appeals Court ___

(4)

Ive Provided you Guys With Enough Information To Merrit you Taking a Look At The Facts And Whether Ive Accumulated 3 Strikes. Ive Not

Ive Always Acted In Good Faith. 1&2(A) 1&2(B) See Exhibits Justice Dept

See The First Claim I Ever Filed Was 1:03Cv840 Hale v Harrison Co Bd Supv Thay Broke my Ribs At The Harrison County Jail And Laughed at me And told me To Sue Them -- The Man who Broke my Ribbs In 2003 Ryan Teel was a Judges Son Wes Teel - He killed a Man Named Jessie Lee Williams In 2006 While my Case was Pending - The Juge Ended up with (5) Three Charges - Bribes Taking

He And Eight Other Officers At The Jail were Charged -- There is A Long Sordid History Of Abuse And Civil Rights Violations At That Jail. All My Civil Actions were Over This Abuse, OR for Refusing To Follow The Requirements Of The Americans With Disabilitys Act.

Please Excuse my Appeal With The Judges - A panel preferably Also Please Inform me if and How I might Get In To The U.S. Supreme Court On This Issue - I know it's A Long Shot But I wish To Try - God is On my Side. Respectfully

This The 29th day of Aug Under Penalty of Perjury

John Hale

(6)





# Department of Justice

FOR IMMEDIATE RELEASE
FRIDAY, MARCH 23, 2007
WWW.USDOJ.GOV

CRT
(202) 514-2007
TDD (202) 514-1888

## Four Former Harrison County, Miss. Deputy Sheriffs Indicted for Role in Violating Inmates' Civil Rights

WASHINGTON — A federal grand jury in Jackson, Miss., returned a five-count criminal superseding indictment against four former deputies with the Harrison County Sheriff's Department for conspiring to violate the civil rights of inmates at the Harrison County Adult Detention Center, Wan J. Kim, Assistant Attorney General for the Department of Justice's Civil Rights Division, and Dunn Lampton, U.S. Attorney for the Southern District of Mississippi, announced today. The Department alleges that the four former deputies' actions resulted in injury to the inmates and resulted in the death of inmate Jessie Lee Williams Jr. on Feb. 6, 2006.

The superseding indictment, unsealed today, charges four former deputies—Ryan Michael Teel, James Ricky Gaston, Daniel Evans, and Karl W. Stolze—with conspiracy to deprive inmates of their civil rights. Count one alleges that these four deputies conspired with other correctional officers to intentionally use excessive force to punish, intimidate, injure, oppress, threaten and retaliate against inmates at the jail between Feb. 8, 2005, and March 8, 2006. Count two of the indictment charges Teel with depriving Williams of his civil rights in the alleged Feb. 4, 2006, assault. Count three charges Teel with allegedly falsifying an official report with intent to obstruct an investigation into the assault on Williams. Count four charges Teel and Gaston with violating the civil rights of a pre-trial detainee during an alleged assault on Aug. 9, 2005. Count five charges Gaston with violating the civil rights of a pre-trial detainee in an alleged assault on Oct. 10, 2005.

Counts one and two each carry a maximum penalty of life imprisonment. Count three carries a maximum penalty of 20 years imprisonment and a fine of $250,000. Counts four and five each carry a maximum penalty of 10 years imprisonment and a fine of $250,000.

An indictment is merely an accusation and the defendants are presumed innocent unless proven guilty.

Since Williams' death, five additional former Harrison County Sheriff's Department deputies have pleaded guilty to federal criminal civil rights crimes committed at the jail. Four of the former deputies pleaded guilty to conspiracy to deprive inmates of their civil rights. The fifth deputy pleaded guilty to deprivation of rights in connection with the Williams incident. The five defendants still are awaiting sentencing.

The Civil Rights Division is committed to the vigorous enforcement of every federal criminal civil rights statute, such as laws that prohibit the willful use of excessive force or other acts of misconduct by law enforcement officials. The Division has compiled a significant record on criminal civil rights prosecutions. In Fiscal Year 2006, nearly 50 percent of the cases brought by the Criminal Section of the Civil Rights Division involved prosecutions for law enforcement misconduct. During the past six years, the Department of Justice has convicted nearly 50% more defendants for official misconduct than during the preceding six years.



Case: 17-60246     Document: 00514145490     Page: 10     Date Filed: 09/07/2017

#07-179: 03-23-07 Four Former Harrison County, Miss. Deputy Sheriffs Indicted for Rol...    Page 2 of 2

Civil Rights Division prosecutors Lisa M. Krigsten and John Cotton Richmond and Assistant United States Attorney Jack B. Lacy Jr. handled this matter for the U.S. Department of Justice. The Mississippi Bureau of Investigation assisted the U.S. Department of Justice in its investigation of this matter.

###

07-179





# Department of Justice

FOR IMMEDIATE RELEASE  
FRIDAY, AUGUST 17, 2007  
WWW.USDOJ.GOV

CRT  
(202) 514-2007  
TDD (202) 514-1888

## Former Harrison County, Mississippi, Corrections Officer Found Guilty of Criminal Civil Rights Violations, Obstruction of Justice

WASHINGTON — A federal jury convicted Ryan Michael Teel, a former corrections officer, for his role in abusing inmates at the Harrison County Adult Detention Center in Gulfport, Miss., the Justice Department announced today. Teel was found guilty of conspiracy to violate inmates' civil rights, and specifically, for depriving Jessie Lee Williams Jr. of his civil rights on Feb. 4, 2006. Williams died from severe brain trauma after being beaten by Teel in the booking room of the jail. The jury also convicted Teel for obstructing justice by writing a false report to cover up the Williams assault.

During the two-week trial in Hattiesburg, Miss., jurors heard testimony from numerous officers, including several who had previously pled guilty to federal civil rights crimes, that Teel was one of the ringleaders in a conspiracy aimed at physically abusing inmates. The jury heard that Teel was involved in creating a culture of violence at the jail, particularly in the booking area where inmates are processed into the facility.

During the course of the federal investigation that led up to this trial, eight corrections officers pleaded guilty to civil rights violations. In the past nine months, former Deputies Dedri Yulon Caldwell, Daniel Lamont Evans, William Jeffrey Priest, Karl Walter Stolze, Morgan Lee Thompson, and Preston Thomas Wills have all pleaded guilty to conspiring to abuse inmates at the jail. Former Deputies Regina Lynn Rhodes and Timothy Brandon Moore have also pleaded guilty to civil rights crimes and obstruction of justice.

"Ryan Michael Teel and other corrections officers created a culture of violence and abuse that resulted in the death of Jessie Lee Williams Jr. and violations of the civil rights of other inmates. These officers misused their positions of power and violated the public trust when they abused those in their custody," said Wan J. Kim, Assistant Attorney General for the Civil Rights Division of the Department of Justice. "This case demonstrates the Department's commitment to aggressively pursuing law enforcement officials who cross the line to engage in criminal misconduct."

"Today's verdict brings to an end a tragic and troubling era in the Harrison County Jail," said U.S. Attorney Dunn Lampton. "What the jury and public have now seen is the result of a very thorough and meticulous investigation resulting in the convictions of nine former jailers who were involved in this criminal culture of violence. I praise the outstanding investigative work of the FBI and the Mississippi Bureau of Investigation, the valuable cooperation from District Attorney Cono Caranna and Sheriff George Payne, and the skill and efforts of DOJ Trial Attorneys Lisa Krigsten and John Richmond and members of my staff."

Teel faces a maximum sentence of life in prison. Sentencing is set for Nov. 1, 2007, before U.S. District Judge Louis Guirola Jr. Teel's co-defendant, James Ricky Gaston, was acquitted on the conspiracy charge as well as two separate charges for assaulting inmates at the jail.


Exhibit

The Civil Rights Division is committed to the vigorous enforcement of every federal criminal civil rights statute, such as those laws that prohibit the willful use of excessive force or other acts of misconduct by law enforcement officials. The Division has compiled a significant record on criminal civil rights prosecutions. In the past six fiscal years, as compared to the previous six years, the Criminal Section filed 25 percent more color of law cases and obtained convictions of 50 percent more defendants.

Federal prosecutors Lisa M. Krigsten and John Cotton Richmond of the Civil Rights Division handled this matter for the Department of Justice with assistance from the U.S. Attorney's Office. Assistant Attorney General Kim and U.S. Attorney Lampton thank the Mississippi Highway Patrol for their unwavering assistance during the course of this important investigation. Special Agent Joel J. Wallace of the Mississippi Bureau of Investigation served as the lead investigator throughout the investigation.

###

07-633

"The Court in *Fay* stated its knowing-and-deliberate-waiver rule in language which applied not only to the waiver of the right to appeal, but to failures to raise individual substantive objections in the state trial." *Id.*, at 88, n. 12.

Finally, in *Reed* v. *Ross*, 468 U.S. 1 (1984), we again considered the consequences of an appellate [**2659] procedural default. The defendant had not raised the constitutional error in his appeal to the North Carolina Supreme Court. Relying on *Fay* v. *Noia*, we reaffirmed that the federal court has power to look beyond the state procedural default and entertain the state prisoner's application for a writ of habeas corpus. [21] In determining whether the power should be exercised, we found that the requirements of "cause" and "prejudice" that had been discussed in *Wainwright* v. *Sykes* had both been satisfied. The "cause" for the failure to object was the fact that counsel had not anticipated later decisions from this Court that supported the claim. We explained:

[*514] "[The] cause requirement may be satisfied under certain circumstances when a procedural failure is not attributable to an intentional decision by counsel made in pursuit of his client's interests. And the failure of counsel to raise a constitutional issue reasonably unknown to him is one situation in which the requirement is met." *Reed* v. *Ross*, 468 U.S., at 14.

---

21 "Our decisions have uniformly acknowledged that federal courts are empowered under 28 U. S. C. § 2254 to look beyond a state procedural forfeiture and entertain a state prisoner's contention that his constitutional rights have been violated. See, e. g., *Francis* v. *Henderson*, 425 U.S. 536, 538 (1976); *Fay* v. *Noia*, 372 U.S. 391, 398-399 (1963). See generally W. Duker, A Constitutional History of Habeas Corpus 181-211 (1980). The more difficult question, and the one that lies at the heart of this case is: What standards should govern the exercise of the habeas court's equitable discretion in the use of this power?" 468 U.S., at 9.

---

In the *Reed* opinion we carefully identified the valid state interest that is served by enforcing a procedural default that forecloses state appellate review of a federal constitutional claim, *id.*, at 10-11; *ante*, at 490-491. But we squarely held that this interest is not sufficient to defeat a meritorious federal claim:

"It is true that finality will be disserved if the federal courts reopen a state prisoner's case, even to review claims that were so novel when the cases were in state court that no one would have recognized them. *This Court has never held, however, that finality, standing alone, provides a sufficient reason for federal courts to compromise their protection of constitutional rights under § 2254.*" 468 U.S., at 15 (emphasis added).

We thus concluded that the appellate default would not bar federal consideration of the constitutional claim.

Like the *Daniels* dissenters, then, in *Fay* and in *Reed*, against the backdrop of appellate defaults, the Court stressed that the State's interest in finality does not preclude review of the federal constitutional claim in a federal habeas court. To [***426] be sure, these opinions suggested that the *power* to hear claims which had been defaulted on appeal should be used sparingly -- in "special circumstances," in the absence of "deliberate bypass," upon a showing of "cause." Even under such terms, however, our holding in *Reed* governs the case before us today. If the State's interest in the finality of its judgment is not sufficient to defeat a meritorious federal claim that was not raised on appeal because the prisoner's [*515] lawyer did not have the ability to anticipate a later development in the law, there is no reason why the same state interest should defeat a meritorious federal claim simply because the prisoner's lawyer did not exercise due care in prosecuting an appeal. There is no more reason to saddle an innocent prisoner with counsel's omission in one case than in the other.

IV

Procedural default that is adequate to foreclose appellate review of a claim of constitutional error in a state criminal trial should ordinarily also bar collateral review of such a claim in a federal district court. But the history of the Court's jurisprudence interpreting the Acts of Congress authorizing the issuance of the writ of habeas corpus unambiguously requires that we carefully preserve the exception which [**2660] enables the federal writ to grant relief in cases of manifest injustice. That exception cannot be adequately defined by a simply stated rule. The procedural default is always an important factor to be carefully reviewed; as Justice Frankfurter explained: "All that has gone before is not to be ignored as irrelevant." *Brown* v. *Allen*, 344 U.S., at 500. But it is equally clear that the prisoner must always have some opportunity to reopen his case if he can make a sufficient showing that he is the victim of a fundamental miscarriage of justice. Whether the inquiry is channeled by the use of the terms "cause" and "prejudice" -- or by the statutory duty to "dispose of the matter as law and justice require," 28 U. S. C. § 2243 -- it is

der state law. On the contrary, the nature of the writ at common law, the language and purpose of the Act of February 5, 1867, and the course of decisions in this Court extending over nearly a century are wholly irreconcilable with such a limitation. At the time the privilege of the writ was written into the Federal Constitution it was settled that the writ lay to test any restraint contrary to fundamental law, which in England stemmed ultimately from Magna Charta but in this country was embodied in the written Constitution. Congress in 1867 sought to provide a federal forum for state prisoners having constitutional defenses by extending the habeas corpus powers of the federal courts to their constitutional maximum. Obedient to this purpose, we have consistently held that federal court jurisdiction is conferred by the allegation of an unconstitutional restraint and is not defeated by anything that may occur in the state court proceedings. State procedural rules plainly must yield to this overriding federal policy." 372 U.S., at 426-427.

17   "A man under conviction for crime has an obvious inducement to do his very best to keep his state remedies open, and not stake his all on the outcome of a federal habeas proceeding which, in many respects, may be less advantageous to him than a state court proceeding. See *Rogers v. Richmond*, 365 U.S. 534, 547-548. And if because of inadvertence or neglect he runs afoul of a state procedural requirement, and thereby forfeits his state remedies, appellate and collateral, as well as direct review thereof in this Court, those consequences should be sufficient to vindicate the State's valid interest in orderly procedure. Whatever residuum of state interest there may be under such circumstances is manifestly insufficient in the face of the federal policy, drawn from the ancient principles of the writ of habeas corpus, embodied both in the Federal Constitution and in the habeas corpus provisions of the Judicial Code, and consistently upheld by this Court, of affording an effective remedy for restraints contrary to the Constitution." *Id.*, at 433-434.

18   "Discretion is implicit in the statutory command that the judge, after granting the writ and holding a hearing of appropriate scope, 'dispose of the matter as law and justice require,' 28 U. S. C. § 2243; and discretion was the flexible concept employed by the federal courts in developing the exhaustion rule. Furthermore, habeas corpus has traditionally been regarded as governed by equitable principles. *United States ex rel. Smith v. Baldi*, 344 U.S. 561, 573 (dis-

senting opinion). Among them is the principle that a suitor's conduct in relation to the matter at hand may disentitle him to the relief he seeks. Narrowly circumscribed, in conformity to the historical role of the writ of habeas corpus as an effective and imperative remedy for detentions contrary to fundamental law, the principle is unexceptionable." *Id.*, at 438.

The dicta in the *Noia* opinion that has been questioned was an attempt to prescribe a rather rigid limitation on the district court's discretion to deny habeas corpus relief based on the applicant's procedural default. The opinion set forth a standard that seemingly required federal judges to excuse every procedural default unless the habeas applicant had personally approved of his lawyer's deliberate decision to bypass an available state procedure. The breadth of that dicta was [*513] ultimately disavowed in *Wainwright v. Sykes*, 433 U.S., at 87-88, but the Court has remained [***425] faithful to the specific holding in *Noia* -- that appellate default in the state system need not bar federal habeas review -- as well as to the basic principles announced in that opinion.

19   "If a habeas applicant, after consultation with competent counsel or otherwise, understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or any other reasons that can fairly be described as the deliberate by-passing of state procedures, then it is open to the federal court on habeas to deny him all relief if the state courts refused to entertain his federal claims on the merits -- though of course only after the federal court has satisfied itself, by holding a hearing or by some other means, of the facts bearing upon the applicant's default. Cf. *Price v. Johnston*, 334 U.S. 266, 291. At all events we wish it clearly understood that the standard here put forth depends on the considered choice of the petitioner. Cf. *Carnley v. Cochran*, 369 U.S. 506, 513-517; *Moore v. Michigan*, 355 U.S. 155, 162-165. A choice made by counsel not participated in by the petitioner does not automatically bar relief." *Id.*, at 439 (footnote omitted).

20   "It is the sweeping language of *Fay v. Noia*, going far beyond the facts of the case eliciting it, which we today reject." 433 U.S., at 87-88.

"We have no occasion today to consider the *Fay* rule as applied to the facts there confronting the Court. . . .

Brown v Allen 344 US 9f500

Habeas Case Judge Frankfurter explained
All That has Gone before, is not To be Ignored
as Irrelevant

it is equally Clear That a
Prisoner Must always have Some Opportunity
To Reopen his Case

